UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LISA CASESA,

                        Plaintiff,                        **MEMORANDUM & ORDER**

        -against-                                         Civil Action No. 16-1396 (DRH)

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**

Stanton, Guzman & Miller, LLP
820 Hempstead Turnpike, 2d Floor
Hempstead, New York 11010
By:     Stacey R. Guzman, Esq.

**For Defendant:**

Bridget M. Rohde
Acting United States Attorney, Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
By:     Sean P. Greene, AUSA

**HURLEY, Senior District Judge:**

        Plaintiff, Lisa Casesa ("Casesa" or "Plaintiff") seeks judicial review of the determination

of the Commissioner of Social Security, following a hearing before an Administrative Law Judge

("ALJ"), that she has not been under a disability as defined in the Social Security Act and

therefore is not entitled to disability benefits. The ALJ found that Plaintiff has severe

impairments consisting of cervical herniated disc, degenerative disc disease of the cervical spine

---

[1] Nancy A. Berryhill is substituted pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure.

with radiculopathy, thoracic spine radiculopathy, degenerative disc disease of the lumbrosacral spine with radiculopathy, status post laminectomy, bursitis and impingement syndrome of the right shoulder with labral tear, status post-surgery. However, the ALJ further found that these impairments do not render her disabled. Specifically, she found that (1) Plaintiff has the residual functional capacity to perform a substantial range of sedentary work, in that she could lift, carry, push and pull up to 10 pounds frequently; sit for six hours and stand and/or walk for two hours in an eight-hour workday, with brief one to two minute breaks to change positions or use the bathroom every 30 minutes; occasionally climb stairs or ramps, stoop, kneel, crouch, and crawl; and never climb ladders, ropes or scaffolds or reach overhead, laterally or forward to shoulder level with the right arm; and must avoid concentrated exposure to temperatures, wetness, humidity, vibration, dangerous moving machinery and unprotected heights; and (2) considering that residual functional capacity, her age, education and work experience there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 12-21.)

Plaintiff raises the following arguments in support of her motion seeking judgment on the pleadings reversing the decision of the Commissioner: the ALJ erred in determining that plaintiff's lumbar condition did not meet the requirements of Listing 1.04(A); the ALJ failed to properly evaluate and weigh the medical opinion evidence and her determination is not supported by substantial evidence; and the ALJ failed to properly evaluate Graff's credibility.

Having reviewed the record, the Court finds that the ALJ's rejection of Plaintiff's claim is supported by substantial evidence and that there was no legal error. Accordingly, Plaintiff's motion for judgment on the pleadings is denied and the cross-motion of the Commissioner for judgment on the pleadings is granted.

## BACKGROUND

Plaintiff was born in 1964; she graduated from high school and completed one year of college. Her primary work history consists of event coordination. From 2000-2011, plaintiff worked as an event coordinator for a web development company, which involved coordinating all aspects of set-up and scheduling of trade shows. Prior to that, she worked as a part-time Spanish teacher for five years, starting in 1999. From 1999-2001, plaintiff also worked as a receptionist and was responsible for answering telephones, filing, and copying. She suffered a work-related injury to her back on June 2, 2009. She stopped working on September 1, 2011, her alleged onset date, due to chronic pain and physical impairments. (Tr. 30, 37, 39, 151-54, 160).

According to the May 9, 2013 Function Report completed by Plaintiff, her daily activities consist of getting her children ready for school, resting, reading, picking up the children from school, cooking "small, easy" meals, doing light chores, and attending doctor's appointments. She is able to shop, travel alone, walk, drive, and ride in a car. Other activities include going to dinner, playing board games, and going for coffee with friends on a weekly basis. She also attends church, her children's soccer games, and grocery shops on a regular basis. She is able to use a computer, pay bills, count change, and handle a savings account. However, she reported she only able to walk 15-20 minutes at a time, and cannot lift more than 10 pounds, stand for more than 10-15 minutes, or sit for more than an hour. She can reach upwards, but cannot reach below without back pain and her husband helps her with a number of household and family responsibilities, such as taking care of the children, bringing the laundry down to and up from the basement, vacuuming, putting sheets on the bed, retrieving pots from under the cabinet, and cleaning the tub and the floor. (Tr. 174-81.)

Plaintiff testified that she lives in a two-story single-family home with her husband and three youngest children, ages 8, 13, and 15. She has a driver's license and drives her children to school every day, and regularly drives to attend physical therapy and other doctors' appointments, to go grocery shopping, and to attend activities for her children. If necessary, she would be able to take the train to get to doctors' appointments. She can bathe herself, cook, do laundry, lift about a gallon of milk, sit for 30 minutes at a time, stand 5-10 minutes at a time, and walk about two blocks. She had recently started knitting. Plaintiff experiences back pain and spasms every day, which she described as taking her breath away at times and to the equivalent of a Charlie horse. Her back is stiff in the morning and has back spasms later in the day. Her back pain is in her lower back on the right side and goes down her right leg to the arch of her foot with cold or damp weather making her back pain worse. She has urinary incontinence when she has back spasms and has to use the bathroom frequently, around twelve times a night and around every hour to hour-and-a-half during the day. She also experiences neck and shoulder pain. (Tr. 32-50.)

The record contains notes and evaluations by a number of medical professionals as well the results of MRIs. These materials are discussed as appropriate below.

## DISCUSSION

### I. Standard of Review

In reviewing a decision of the Commissioner, a court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart*, 341

F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). An

ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite

every piece of evidence that contributed to the decision, so long as the record 'permits [the

Court] to glean the rationale of [his or her] decision.' " *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3

(2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains

true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y.

2004)

  Furthermore, the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the

case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks

and citation omitted). Thus the only issue before the Court is whether the ALJ's finding that

Plaintiff was not eligible for disability benefits was "based on legal error or is not supported by

substantial evidence." *Rosa*, 168 F.3d at 77.

## II. The ALJ Properly Concluded that the Impairment Did Not Equal Any Listed Disorder

  Plaintiff's first argument is that the ALJ erred at step three of the now familiar five-step

analysis for evaluating disability claims established by SSA regulations (*see, e.g.,* 20 C.F.R. §

404.1520; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)) in concluding that her back

impairments did not meet the requirements of Listing 1.04(A).

  Listing 1.04(A) covers the following: "[d]isorders of the spine, e.g. herniated nucleus

pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

arthritis, [or] vertebral fracture, resulting in compromise of a nerve root (including the cauda

equina) or the spinal cord." In addition to the foregoing it requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, subpart P, Appendix 1, Section 1.04(A) (emphasis added). Given the regulations use of the conjunctive, the presence of evidence of only one factor, such as positive leg raises, is insufficient to support a finding that the requirements of the listing have been met.

Here, the record is devoid of evidence of motor loss, sensory or reflex loss; in fact, Dr. Annello's notes[2] consistently show that Plaintiff was neurologically intact with no motor, sensory or reflex loss. (*See* Tr. 206, 208, 289, 302-03, 313, 318, 419-28, 532, 537). Plaintiff's references to her subjective pain (*see* Pl.'s Mem. at unnumbered pp. 7-8) are unavailing as pain, in and of itself, does not satisfy the listing.

There was no error by the ALJ at step three.

### III. The ALJ Properly Weighed the Medical Evidence and Her Determination is Supported by Substantial Evidence

Turning to Plaintiff's next argument, the Court finds that the ALJ properly weighed the medical evidence and her determination is supported by substantial evidence.

#### A. The Treating Physician Rule

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by

---

[2] Dr. Annello, an anesthesiologist and Pain Management Physician, treated Plaintiff for her lumbar spine pain from November 12, 2010 to March 21, 2014.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79. Further, although an ALJ will consider medical opinions regarding a claimant's functioning, ultimately the ALJ must reach an RFC assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.")

The "treating physician rule" does not apply when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Hallora*n, 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. *Id*. § 404.1527(d)(2)(I-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32; *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. App'x 74, 77 (2d Cir. 2012). Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

It is well-settled, however, that a "medical source's conclusion that an individual is

disabled is not entitled to controlling weight." *Bynum v. Astrue*, 2013 WL 1873286, * 2 (E.D.N.Y. May 3, 2013). Such statements do not come within the purview of the Treating Physician Rule; the ultimate finding of whether a claimant is disabled is an issue reserved to the Commissioner. *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999); *Bynum*, 2013 WL 1873286, at *3; 20 C.F.R. §§ 404.1527(d)-(d)(1), 416.927(d)-(d)(1). Similarly, opinions regarding disability in the Workers' Compensation context are not binding as the standards which govern Workers' Compensation and social security disability benefits are not the same. *Bynum*, 2013 WL 1873286, at * 3; *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994).

### B.    Application to the Present Case

Plaintiff maintains that the ALJ violated the treating physicians rule because, with respect to Dr. Annello, Plaintiff's anesthesiologist who performed pain management, the ALJ failed to consider the five factors noted above and did not specify what weight she assigned to his opinion. In fact, the ALJ's opinion demonstrates that she did consider the relevant factor and did specify the weight she afforded Dr. Annello's opinion

In the present case, the ALJ did not give Dr. Annello's opinion controlling weight but rather only "some weight."  (Tr. 15-16.) The ALJ began her analysis of Dr. Annello's opinion by noting the length of his treatment of Plaintiff (February 7, 2011 to March 21, 2014), his diagnosis that she suffered from failed back syndrome with lumbar radiculopathy,  and his notation that Plaintiff experienced "greater than 80% relief" following stimulator implantation. She gave Dr. Annello's opinion "some weight", i.e. crediting his opinion to the extent he opined that Plaintiff had no restrictions on her hands. She rejected his opinion  that Plaintiff was totally disabled because that decision is reserved to the Commissioner and because it was couched in terms

applicable to workers' compensation which is governed by a different standard. The ALJ also specifically referenced and summarized the results of the various test in the record, including cervical and left shoulder MRIs and a lower EMG taken in 2011, a lumbar MRI taken in 2012, 2013 lumbar x-rays and 2014 right shoulder arthrogram, all of which were "relatively mild to less-than marked findings." (Tr. 15-17.)

In addition, the ALJ noted the results of the consultative examination by Dr. Caiti. Those results included (1) normal gait, (2) the ability to walk on heels and toes and squat fully, (3) no positive examination findings in regard to fine motor activity of the hands, cervical spine or upper extremities, (4) full strength and reflexes, (5) no spinal, paraspinal, sacroiliac or sciatic notch tenderness; (6) negative leg raises; (7) some reduced range on motion in the lower extremities; (8) no atrophy or sensory abnormalities; and (9) no joint effusion, inflammation or instability. The ALJ afforded "some weight" to Dr. Caiti's opinion that Plaintiff has mild limitations in bending and lifting due to low back pain but was otherwise unrestricted in sitting, standing, walking, reaching, pushing, pulling, and climbing. (*See* Tr. at 14-15.)

Other evidence in the record that supports the ALJ's determination includes the conservative nature of treatment, Dr. Annello's examination findings, and Plaintiff's ability to engage in activities of daily living such as attending her children's soccer games, driving, going out for lunch with friends, going for a two-mile walk, climbing stairs without pain, and scrap-booking.

Finally, the Court rejects Plaintiff's argument that the ALJ was required to subpoena "supplemental information" or the doctor himself. (Pl.'s Mem. at 19.) There were no obvious gaps in the administrative record and the ALJ had a complete medical history, as confirmed by

Plaintiff's counsel at the administrative hearing (Tr. at 29). *See Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999).

In sum, the ALJ considered the relevant factors and specified the weight she assigned to Dr. Annello's opinion. She committed no legal error.

As the above discussion makes clear, the ALJ's determination of Plaintiff's residual functional capacity was supported by substantial evidence in the record. Plaintiff's argument that "the Commissioner must proffer specific medical evidence that the claimant can meet the exertional demands necessary to maintain work at the given exertional level," (Pl..'s Mem. at 12-13) is based on precedent which, as the Commissioner correctly states, "was abrogated by statute." (Def.'s Mem. at 20) *See Poupore v. Astrue*, 566 F.3d 303, 306 (2009) (holding that under regulations promulgated on August 26, 2003, Commissioner need only show at step 5 that there is work in the national economy that a claimant can perform;  the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Ramos v. Astrue*, 2010 WL 3325205, at *6 (E.D.N.Y. Aug. 19, 1020).

## IV.     Plaintiff's Credibility was Properly Evaluated

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his/her symptoms when analyzing whether the claimant is disabled. *See* 20 C.F.R. § 404.1529(a) (2011). In order to evaluate that subjective testimony, the ALJ must first determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce" the claimed symptoms. *See* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit

the individual's ability to do basic work activities." *Id*. Moreover, if a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992) (internal quotation marks omitted).

If a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. *See* 20 C.F.R. § 404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *Id*. An ALJ need not, however, explicitly recite the seven relevant factors. See *Chichocki v. Astrue*, 534 Fed. App'x 71, 75 (2d Cir. 2013). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.' " *Id*. (quoting SSR 96–7p, 1996 WL 374186, at *2). A single conclusory statement that the claimant is not credible is not sufficient; the evidence of record must "permit [a court] to glean the rationale of an ALJ's decision." *Id*. (internal quotation marks omitted.)

Here, the ALJ cited that fact that "[t]here is little evidence in this record that [Plaintiff's] daily living activities have been significantly restricted based on her impairment" as well as the conservative treatment regiment. In addition, the record reveals that Plaintiff's pain improved with physical therapy; she was able to stop taking muscle relaxers, go for a two-mile walk, and climb stairs without pain. (Tr. 230-32, 272.) Notwithstanding plaintiff's assertions to the contrary, the ALJ sufficiently explained her credibility determination. "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the

credibility of witnesses.'" *Cichoki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (summary order) (quoting *Carroll v. Secy. of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The ALJ properly identified specific record-based reasons for her credibility findings and the record evidence permits the Court "to glean the rationale of the ALJ's decision." *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, Defendant's cross-motion is granted, and the decision of the Commissioner is affirmed. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this case.

Dated: Central Islip, New York
      October 10, 2017                      /s/  Denis R. Hurley
                                             Denis R. Hurley
                                             United States District Judge